Allen J. TAYLOR, Appellant,

v.

HOLLAND ELECTRIC COMPANY et al., Appellees.

No. 6619.

Court of Civil Appeals of Texas.

Beaumont.

Jan. 7, 1965.

Rehearing Denied Feb. 3, 1965.

Ernest Sample, Beaumont, for appellant.

Keith, Mehaffy & Weber, King, Sharfstein & Rienstra, Howell & Howell, Beaumont, for appellees.

STEPHENSON, Justice.

This is a suit for damages because of personal injuries suffered by plaintiff from an electric shock and fall. Defendants are Chesson, the owner of the premises, Jones, the general contractor, and Holland, the electrical contractor. Plaintiff was employed by Hollywood Overhead Door Company which had contracted to install the overhead doors in the building under construction. Trial was by jury, but at the close of all of the evidence the court discharged the jury and rendered judgment for all the defendants. The parties will be referred to here as they were in the trial court.

There was no error on the part of the trial court in rendering such judgment. No one was present at the time plaintiff received the injuries he described in his petition. His testimony in reference to the incident was to the effect that he did not see the wires at the time he felt the shock that caused him to fall from the scaffold to the ground. He climbed upon the scaffold to fasten a power unit to a ceiling joist with an electric drill in his hand. This drill had a long cord and was connected to a temporary service pole on the outside of the building. It was a hot day and he was perspiring. The electric drill had either an aluminum or cast iron handle. The plaintiff gave the following testimony:

"Q. And your testimony is that you don't know how the electricity was turned on?

"A. That's right.

"Q. And you don't know if the electricity came from the temporary post or the building where you got shocked?

"A. No sir.

"Q. Were those wires all in conduit at that time?

"A. I don't know about that.

"Q. Or just naked wires?

"A. I don't know if they were in conduit or what they were in."

The burden of proof was upon the plaintiff to establish both negligence and proximate

cause. This he failed to do. By his testimony it is just as likely that the shock he described came from the electric drill as from an exposed wire. This point is controlled by the statement of the Supreme Court in Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1 as follows:

" * * * Verdicts must rest upon reasonable certainty of proof. Where the proof discloses that a given result may have occurred by reason of more than one proximate cause, and the jury can do no more than guess or speculate as to which was, in fact, the efficient cause, the submission of such choice to the jury has been consistently condemned by this court and by other courts."

■ The trial court did not err in rendering judgment for the defendants, as the testimony established as a matter of law that plaintiff was guilty of contributory negligence. Plaintiff testified as follows:

"Q. You know that in an incompleted building the insulation of wires is not completed and the wires are not in the same condition that they would be in after the building is completed?

"A. Yes."

"Q. I asked you if it isn't a fact that a lot of times when the electricians are not yet finished with their work that they leave the electrical work half finished?

"A. Yes.

"Q. This building was not completed and the work was still going on?

"A. Yes.

"Q. The electricians still had work to do?

"A. Yes."

"Q. Did you look to see if there was a conduit that went up to that part of the ceiling?

"A. No.

"Q. Anything to keep you from looking?

"A. I was working.

"Q. You were so absorbed in your work you didn't bother to look if there were wires up there?

"A. I was working."

"Q. Did you make any effort to see what your hand was getting into?

"A. I just throwed my hand over the power unit so as to fasten it to the ceiling.

"Q. Were these wires hanging down from this (junction) box?

"A. They were when I went back to look (Monday morning), they were sticking down."

"Q. You went back there by that place about 9:00 o'clock Monday morning following the accident?

"A. Yes.

"Q. That is when you looked to see what had happened?

"A. Yes.

"Q. The truth is, of your own knowledge, you don't know if the wires were out or in the junction box (On Saturday)?

"A. No.

"Q. You didn't see them?

"A. No."

"Q. It was light enough to see up there, it didn't take you but five minutes to do that?

"A. I could see pretty good."

"Q. Had you worked there the evening before?

"A. I just went by and helped them a little.

"Q. You hadn't noticed any wires hanging down in there?

"A. No, sir."

"Q. Did you look at all up there, (to ceiling) that is what I am asking you?

"A. No, I just went to work."

"Q. And this (junction) box, when you looked at it on Monday, was it above where you were attaching that mechanism to?

"A. Yes, above it.

"Q. How far above?

"A. 3 or 4 inches, something like that.

"Q. And if it was just that far if you had looked you could have seen it?

"A. If I had been looking for it I could have seen it."

"Q. And a building in this stage of construction as the grease rack building was, did you ever know of electricians disconnecting the electricity at the switch?

"A. No, sir, I don't."

This testimony established as a matter of law that plaintiff did not conduct himself under the circumstances as an ordinary prudent person. We hold that the danger from an electrical wire under the circumstances in this case was patently obvious as a matter of law.

Plaintiff complains of the action of the trial court in overruling his motion for continuance. The record shows that this case was filed November 6, 1956, and that this case was pending on the "try or dismiss docket". The trial court overruled the plaintiff's fourth motion for continuance June 25, 1962, which motion incorporated all of the allegations contained in plaintiff's second motion for continuance. The ground for such motion was the absence of the

plaintiff who was in Alaska. The case was tried by using plaintiff's deposition. This record does not show an abuse of discretion by the trial court. The point is overruled.

Affirmed.